UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-21948-CIV-GRAHAM/TORRES

FRANCISCO ROMERO, an individual,
REINIER GUERRERO-FAIFE, an individual,
CONRADO DIAZ, NELSON J. ROJAS, an
individual, and RAMIRO RODRIGUEZ, an
individual, and YOHANDY SERRANO, an
individual, individually and on behalf of all
others similarly situated,

               Plaintiffs,

vs.

FUELTECH OIL SERVICE CORP.
a Florida corporation, and FLORIGAS,
INC., a Florida corporation,

               Defendants.

# PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, FRANCISCO ROMERO, REINIER GUERRERO-FAIFE, CONRADO DIAZ, NELSON J. ROJAS, and RAMIRO RODRIGUEZ, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56(c) and Local Rule 7.5, hereby file their Consolidated Opposition to Defendants' Motion for Final Summary Judgment and Cross-Motion for Partial Summary Judgment and, in support thereof, state as follows:

## I.    INTRODUCTION

On July 14, 2009, Plaintiffs filed a complaint against Defendants as a collective action under the Fair Labor Standards Act ("FLSA"), seeking recovery of unpaid overtime wages under

29 U.S.C. § 216(b) and damages for retaliatory discharge under 29 U.S.C. § 215(a)(3).[1] Plaintiffs also asserted claims under the Florida Minimum Wage Act, however, on September 2, 2009, and subsequent to the filing of Defendants' August 19, 2009 Motion to Dismiss, Plaintiffs filed an Amended Complaint, dropping these state law claims in order to streamline the litigation process and avoid a protracted dispute about opt-in and opt-out class and collective claims. On September 15, 2009, Defendants filed their Answer and Affirmative Defenses asserting, *inter alia*, that Plaintiffs are not entitled to claim or recover statutory overtime compensation from Defendants as they were exempt employees under the Motor Carrier Act, 29 U.S.C. § 213(b). On February 15, 2010, Defendants filed a Motion for Final Summary Judgment as to Plaintiffs' overtime compensation claims based on Defendants' Motor Carrier Act Exemption defense. As more fully set forth herein, Plaintiffs are not exempt employees under the Motor Carrier Act as a matter of law and, thus, Defendants' Motion for Final Summary Judgment should be DENIED and Plaintiffs' Cross-Motion for Partial Summary Judgment as to Defendants' Motor Carrier Act defense should be GRANTED.

## II.   STATEMENT OF FACTS

Plaintiffs were all employed as drivers for either or both Defendants at some point during the time period of December of 2006 and April of 2009. (Pls.' Stmt. ¶ 1). All Plaintiffs were paid a weekly salary for forty hours worth of work. (Pls.' Stmt. ¶ 2). All Plaintiffs were required to work hours in excess of forty hours per week, for which they received no compensation. (Pls.' Stmt. ¶ 3).

Defendant Fueltech is a wholesale distributor of diesel fuel and gasoline, which it

---

[1] These retaliatory discharge claims were voluntarily dismissed by Plaintiffs on January 25, 2010.

purchases at Port Everglades on a daily, as-needed, basis from Transmontaigne Product Services. (Defs.' Stmt. ¶ 2). Transmontaigne ships the fuel and gasoline in barges from several of its out of state refineries. (Defs.' Stmt. ¶ 2). Upon arrival at the Port, the fuel is pumped into Transmontaigne's large storage tanks and then loaded by Fueltech into its own tanker trucks. (Defs.' Stmt. ¶ 2). Fueltech then delivers the fuel locally to its own customers. (Defs.' Stmt. ¶ 2, 9).

Defendant Florigas is a wholesale propane gas distributor. (Defs.' Stmt. ¶ 4). The propane gas is purchased from Targa Liquids Marketing and Trade in Texas, delivered to Florida by Targa in barges, and then transported by Targa to Florigas' facility, where it is unloaded into Florigas' temporary storage tanks. (Defs.' Stmt. ¶ 4). Florigas then delivers the gas to its own local customers. (Defs.' Stmt. ¶ 4).

There is nothing in the record to suggest, nor have Defendants asserted, that Defendants are subsidiaries of Transmontaigne or Targa. (Pls.' Stmt. ¶ 12). There is also nothing in the record which suggests that Defendants are for-hire motor carriers for Transmontaigne or Targa or that Defendants are otherwise engaged in the business of transporting fuel and petroleum products for any company other than themselves. (Pls.' Stmt. ¶ 13).

### III.   MEMORANDUM OF LAW

**A.   Standard of Review for Summary Judgment**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party initially bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986). "If the non-moving party fails to show a genuine issue exists, summary judgment should be granted." *Herman v. City of St. Petersburg*, 131 F. Supp. 2d 1329 (M.D. Fla. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

**B.     Overtime Liability Under the Fair Labor Standards Act**

The Fair Labor Standards Act ("FLSA") was enacted in 1938 to ensure that every employee receives "a fair day's pay for a fair day's work." *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (quoting address to Congress by Franklyn D. Roosevelt in 1937). In light of the FLSA's **broad remedial purposes**, it is well settled that the FLSA is to be **liberally construed** to apply to the furthest reaches consistent with congressional direction. *See Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993). The FLSA requires that employees be paid minimum wage for their work, and that employees who work more than forty hours per week receive overtime compensation at the rate of "time and a half" for every hour over forty. 29 U.S.C. § 207(a)(1) and (e); 29 C.F.R. § 778.108. As recognized by the Middle District Court of Florida:

> The overtime provisions of the FLSA serve two purposes. The first purpose is to spread employment by placing financial pressure on the employer to hire additional workers rather than to continually employ the same number of workers for longer hours. The second purpose is to compensate employees who do work "overtime" for the burden of having to do so.

*Herman v. City of St. Petersberg*, 131 F. Supp. 2d 1329 (M.D. Fla. 2001) (citations omitted). Employers who violate the overtime provisions of the FLSA "shall be liable to the employee or employees affected in the amount of…their unpaid overtime compensation…and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b)

**C.     The Motor Carrier Act Exemption**

Section 213(b)(1) of the FLSA provides an exemption from the overtime provisions of the FLSA for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." The Eleventh Circuit has explained that

> [t]he Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property *in interstate or foreign commerce* within the meaning of the Motor Carrier Act.

*Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (citing 29 C.F.R. § 782.2(a)) (emphasis added). Clearly, highway transportation by motor vehicle from one state to another constitutes "interstate commerce." *See* 29 C.F.R. § 782.7(b)(1). Additionally, for purposes of the Motor Carrier Act, "purely intrastate transportation can constitute part of interstate commerce if it is part of a *continuous stream of interstate travel*. For this to be the case there must be a *practical continuity of movement* between the intrastate segment and the overall interstate flow." *Mena v. McArthur Dairy, LLC*, No. 09-12657, 2009 WL 3004009, *3 (11th Cir. September 22, 2009) (citations omitted) (emphasis added). For example, goods being transported entirely intrastate may, nonetheless, be considered as part of a continuous stream of interstate travel where such goods are bound for interstate destinations. *See, e.g., Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993) (holding that plaintiff's intrastate transportation of empty milk crates immediately bound for out of state was sufficient to exempt him from the overtime provisions of the FLSA).

However, even in cases where goods being transported locally by plaintiffs are not bound for interstate destinations, such as when goods are brought in from out of state and then distributed from a warehouse within the state to end destinations in that state, such goods may be considered part of a continuous movement in interstate commerce if there is a "fixed and persisting transportation intent" on the part of the shipper "beyond the terminal storage point at the time of shipment." *DeMaria v. Ryan P. Relocator Co.*, 512 F. Supp. 2d 1249, 1255 (S.D. Fla. 2007). Pursuant to 29 C.F.R. § 782.7(b) (the Secretary of Labor's interpretations of the scope and applicability of the Motor Carrier Act Exemption), there is no fixed and persisting intent where:

> (i) at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(2). Although the Eleventh Circuit does not require that all three factors be present, but rather, is in favor of a "general consideration that draws a fixed and persisting intent from all of the facts and circumstances surrounding the transportation," these factors are still "instructive in determining whether there was a practical continuity of movement through interstate commerce." *Cruz v. Southern Waste Systems, LLC*, No. 09-21756, 2010 WL 309016, *3 (S.D. Fla. January 25, 2010).

D.     **Plaintiffs are not Exempt from the Overtime Provisions of the FLSA Under the Motor Carrier Act Exemption**

The question of whether Plaintiffs' activities "excluded them from the overtime benefits of the FLSA is a question of law." *Walters v. American Coach Lines of Miami, Inc*., 569 F. Supp. 2d 1270, 1280-81 (S.D. Fla. 2008). Defendants, as employers, have the burden of proving the applicability of the FLSA exemption. *Id*. Given the FLSA's broad remedial purpose, any

exemptions "are to be narrowly construed against the employer who asserts them." *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997) (recognizing that the FLSA's exemptions must be narrowly construed, "giving due regard to the plain meaning of statutory language and the interest of Congress," and also recognizing that "[t]o extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.") (citation omitted).

As noted above, employees are exempt from the overtime provisions of the FLSA if: (1) they are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) they engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property ***in interstate or foreign commerce*** within the meaning of the Motor Carrier Act. Plaintiffs do not dispute that they fall under the first prong of the Exemption or that they engaged in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of property. However, as more fully set forth below, the transportation of fuel and petroleum products by Plaintiffs for either or both Defendants in this case did not constitute interstate commerce within the meaning of the Motor Carrier Act and, thus, the Exemption does not apply.

      *1.*      *The Goods that were Transported by Plaintiffs Intrastate were not Bound for Interstate Destinations*

In nearly every single case cited to by Defendants in support of their argument that Plaintiffs in this case were engaged in interstate commerce, the property or passengers being transported by plaintiffs intrastate were ultimately bound for interstate destinations. *See, e.g., Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (holding that plaintiffs were exempt under the Motor Carrier Act where they traveled intrastate to deliver

7

checks and other instruments which were bound for banks outside of the state of Florida); *Goldberg v. Opelika Royal Crown Bottling Co.*, 299 F.2d 37 (5th Cir. 1962) (holding that plaintiffs were exempt under the Motor Carrier Act where empty bottles they delivered intrastate were bound for out-of-state suppliers); *Martin v. Airborne Express*, 16 F. Supp. 2d 623 (E.D.N.C. 1996) (holding that courier service employees were exempt under the Motor Carrier Act where 90% of the shipments they transported locally were transferred to the Raleigh-Durham airport for distribution outside of the state).[2] As noted by this Court in the 2007 case of *DeMaria v. Ryan P. Relocator Co.*, ***such cases are inapplicable where the defendants have failed to present any evidence to establish that the goods which plaintiffs transported were ultimately bound for interstate or international destinations.*** 512 F. Supp. 2d at 1254 (S.D. Fla. 2007).

In this case, nowhere in their Motion or Statement of Undisputed Facts do Defendants state that the fuel and petroleum products that were transported by Plaintiffs were bound for out of state, or that Defendants maintain any out of state customers. ***To the contrary, Defendants clearly state that all of their deliveries are located within Miami-Dade, Broward, Palm Beach, and Monroe Counties (Defs. Stmt. ¶ 18) and that Plaintiffs were merely cogs in the "final leg" of the interstate commerce chain.*** (Defs. Mtn. Summ. J. Pg. 16), Accordingly, the abundance of

---

[2] For brevity's sake, Plaintiffs will refrain from detailing every case cited by Defendants in which the Motor Carrier Act Exemption was held to apply due to the fact that goods or passengers being transported by plaintiffs were bound for interstate travel. However, the list of remaining cases is as follows: *Mena v. McArthur Dairy, LLC*, No. 09-12657, 2009 WL 3004009 (11th Cir. September 22, 2009); *Alvarado v. I.G.W.T. Delivery Systems, Inc.*, 410 F. Supp. 2d 1272 (S.D. Fla. 2006); *McIntyre v. FLX of Miami, Inc.*, No. 08-20030, 2008 WL 4541017 (S.D. Fla. October, 8, 2008); *Barefoot v. Mid-American Dairymen, Inc.*, 826 F. Supp. 1046 (N.D. Texas 1993); *Walters v. American Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270 (S.D. Fla. 2008); *Hernandez v. Brink's, Inc.*, Case No. 08-20717-CIV-Moore/Simonton (S.D. Fla. January 15, 2009); *Abel v. Southern Shuttle Services, Inc.*, Case No. 07-80584-CIV-RYSKAMP/VITUNAC (S.D. Fla. February 3, 2010).

cases cases relied upon by Defendants, in which the courts have held that the Motor Carrier Exemption applied because the goods transported by the plaintiffs were ultimately bound for interstate destinations, are wholly inapplicable to this Court's determination as to whether Plaintiffs are exempt employees under the Motor Carrier Act. *DeMaria*, 512 F. Supp. 2d at 1254.

> 2. *Defendants' Have Failed to Establish a Fixed and Persisting Transportation Intent on the Part of its Shippers, and Defendants' Fixed and Persisting Transportation Intent at the Time the Goods are Shipped is Wholly Irrelevant*

Because the goods that were transported locally by Plaintiffs were not bound for interstate destinations, crucial to this Court's determination of the essential character of Plaintiffs' movement of the goods is the ***shipper's*** fixed and persisting intent at the time the goods are shipped. *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993). Preliminarily, it should be noted that, in nearly all of the Motor Carrier Act Exemption cases in which courts have held that the Exemption applies, the defendant is either the shipper, a subsidiary of the shipper, or a carrier hired by the shipper to transport its goods. For example, in the case of *Swift Textiles, Inc. v. Walter Motor Lines, Inc.*,[3] the intrastate motor carrier was a transportation company hired by the shipper to transport goods from the shipper's temporary storage facility to their "intended destination inland." 799 F.2d 697, 698 (11th Cir. 1986). Based on these facts, the court held that a "temporary stoppage within the state" did not change the character of the goods' interstate movement where the ***shipper's*** intention existing at the time the movement began was that the goods come to rest at ***its*** inland stores. *Id*. at 699-700.

---

[3] It should be noted that the interstate commerce analysis in the *Swift* case, while proffered in the context of the Carmack Amendment to the Interstate Commerce Act (which deals with liability for goods damaged by motor carriers in interstate commerce), is nonetheless helpful in defining interstate commerce for purposes of the Motor Carrier Act.

Alternatively, the defendant in these cases (whether shipper or not) at the very least controls the movement of the goods from the moment they leave their out-of-state location to the moment they reach their intended intrastate destination. For example, in the case of *Galbreath v. Gulf Oil Corp.*, the defendant was both the shipper of petroleum goods and the owner of a local bulk distribution plant at which plaintiffs were employed as drivers making wholly intrastate deliveries. 413 F.2d 941, 942-944 (5th Cir. 1969). Crucial to the court's holding that these drivers were engaged in interstate commerce for purposes of the Motor Carrier Act was the fact that the defendant shipper "retained control over the products from the time they left the refinery until they were delivered to the consumer." *Id*. at 947; s*ee also Atlantic Independent Union v. Sunoco, Inc.*, No. 03-4389, 2004 WL 1368808 (E.D. Pa. June 16, 2004) (holding that drivers who delivered fuel products from the defendant's main terminal facility in New York to customers in that state were exempt under the Motor Carrier Act where the defendant, a subsidiary of the shipper, took ownership of the products at the pipeline facilities and maintained ownership as they moved continuously through the pipelines and into the defendant's temporary storage facilities).

In contrast, Defendants in this case are ***customers*** of the shipper, be it Targa or Transmontaigne. They do not work for the shipper. They are not owned by the shipper. They do not make deliveries for or on behalf of the shipper or to any of the shipper's customers. Nor is there any evidence that either Fueltech or Florigas takes ownership of the goods until they come to rest at their storage trucks or tanks. For this reason, ***Defendants' "fixed and persisting intent"*** at the time the goods are shipped from out of state (either to the Port or directly to their property), as well as the fact that Defendants may have pre-existing orders to fill from their own fixed customers, is ***entirely irrelevant.*** Instead, ***it is the fixed and persisting intent of***

***Defendants' shippers, Transmontaigne and Targa, at the time the goods are shipped, that controls.***

That being said, there is no evidence that Transmontaigne has any "fixed and persisting transportation intent beyond [its] terminal storage point[s]," which in this case are the large storage tanks at Port Everglades, from which Fueltech and other Transmontaigne customers load fuel into their own tanker trucks. *See* 29 C.F.R. § 782.7(b)(2). In fact, the evidence of record is quite the opposite. Defendant Fueltech buys fuel from Transmontaigne on a daily basis as needed. (Defs.' Stmt. ¶ 2). Fueltech is only one of the ***customers*** for whom Transmontaigne's goods are intended. *See Walling*, 317 U.S. at 567 (noting that "there is a practical continuity of movement of the goods until they reach the customers for whom they are intended."). Similarly, there is no evidence in the record that Targa maintained any "fixed and persisting intent" to move the goods beyond the premises of its customer, Florigas. Nor is there any evidence that either Transmontaigne or Targa has any knowledge, control, or concern as to where the goods will ultimately be delivered to by Plaintiffs. Thus, Defendants have failed to establish the requisite fixed and persisting transportation intent on the part of its shippers necessary to meet their burden of proving that the goods carried by Plaintiffs in this case are done so in interstate commerce for purpose of the Motor Carrier Act.

In fact, a review of the relevant case law illustrates that, based upon the facts as presented by Defendants, neither Transmontaigne nor Targa could maintain any fixed and persistent transportation intent beyond its shipment to Defendants as a matter of law. In the 1927 U.S. Supreme Court case of *Atlantic Coast Line R. Co. v. Standard Oil Co.*,[4] the plaintiff, Standard

---

[4] Although this is not a Motor Carrier Act Exemption case, its analysis of the movement of petroleum goods in interstate commerce is instructive and has been utilized by other courts in

11

Oil, maintained large petroleum storage facilities at Port Tampa, Tampa and Jacksonville. 275 U.S. 257, 262 (1927). Standard Oil would order its products from out-of-state refineries, with title to these products not passing to Standard Oil until they were delivered to its in-state storage facilities. *Id*. at 262-263. Standard Oil would then arrange for the products to be distributed intrastate. *Id*. Approximately 95% of the fuel oil sold by Standard Oil in Florida was on contracts made before the oil had been shipped from out of state to Standard Oil's storage facilities. Based on these facts, the U.S. Supreme Court held that:

> ***the interstate or foreign commerce in all this oil ends upon its delivery to the plaintiff into the storage tanks or the storage tanks at the seaboard***, and that from there its distribution to storage tanks, tank cars, bulk stations, and drivein [sic] stations, or directly by tank wagons to customers, is all intrastate commerce. This distribution is the whole business of the plaintiff in Florida. ***There is no destination intended and arranged for with the ship carriers in Florida at any point beyond the deliveries from the vessels to the storage tanks or tank cars of the plaintiff***. There is no designation of any particular oil for any particular place within Florida beyond the storage receptacles or storage tank cars into which the oil is first delivered by the ships. ***The title to the oil in bulk passes to the plaintiff as it is thus delivered.*** When the oil reaches these storage places along the Florida seaboard, it is within the control and ownership of the plaintiff for use for its particular purpose in Florida. ***The plaintiff is free to distribute the oil according to the demands of its business***, and it arranges its storage capacity to meet the future variation in its business needs….
> ….
>
> The seaboard storage stations are the natural places for a change from interstate and foreign transportation to that which is intrastate and there is nothing in the history of the whole transaction which makes them otherwise, either in intent or in fact. ***There is nothing to indicate that the destination of the oil is arranged for or fixed in the minds of the sellers beyond the primary seaboard storages of the plaintiff company***….everything that is done after the oil is deposited in the storage tanks…is done in the distribution of the oil to serve the purposes of the plaintiff company that imported it. ***Neither the sellers, who deliver the oil, nor the railroad company, that aids the delivery of the oil to the storage tanks and tank cars at the seaboard, has anything to do with determining what the ultimate destination of the oil is, or has any interest in it, or any duty to discharge in respect to it***….

---

determining the application of the Exemption. See, e.g., *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895 (7th Cir. 2009).

*Id*. at 267-270 (emphasis added).

This same principle was reiterated in the more recent 2009 Motor Carrier Act Exemption case of *Collins v. Heritage Wine Cellars, Ltd.* In that case, the Seventh Circuit Court held that there was evidence of a "fixed and persisting intent" by the defendant that goods remain in interstate commerce throughout the final intrastate leg of the journey where the defendant, an Illinois wholesale importer and local distributor of wine, owned and controlled the wine and directed its movements from the moment of shipment to the moment the goods reached their intrastate customers. 589 F.3d 895 (7th Cir. 2009). However, had the defendant "shipped its wine to a wholesale distributor in a Chicago suburb, titled passed to the distributor when the wine arrived at the distributor's warehouse, and the distributor contracted to sell the wine to retail stores and delivered it to them in their own trucks," then "the carriage of the wine from the warehouse to the stores would be classified as ***an intrastate shipment*** under the Motor Carrier Act even though the property shipped originated outside the state." *Id*. at 897 (citing, e.g., *Atlantic Coast Line R. Co. v. Standard Oil Co*., 275 U.S. 257 (1927)). Emphasis Added.

The factual circumstances in *Atlantic Coast Line R. Co.*, as well as those contemplated in dicta by the Seventh Circuit in *Collins*, are nearly identical to the circumstances in this case. Defendant Fueltech buys its products from Transmontaigne at Port Everglades, with title to those products not passing to Fueltech until they are paid for and loaded into their own tanker trucks from Transmontaigne's storage tanks. In fact, the only significant difference between Fueltech and the fuel distributor in *Atlantic Coast Line* is that Fueltech does not order its fuel directly from out of state refineries, but rather purchases the fuel on a daily as-needed basis at the Port. (Defs.' Stmt. ¶ 2). This fact, alone, sufficiently illustrates that Fueltech plays no role in the products' interstate journey from the out of state refineries to its intrastate storage tanks.

13

Similarly, with respect to Florigas, there is no evidence that Florigas takes title to the products it orders from Targa's out of state refineries at any point prior to their arrival at Florigas' on-site storage tanks.

Finally, both Defendants are "free to distribute the oil according to the demands of [their] business" and there is nothing in the record which suggests that either Transmontaigne or Targa has "anything to do with determining what the ultimate destination of the [products]" will be, or "has any interest in [them], or any duty to discharge in respect to [them]." *Atlantic Coast Line R. Co.*, 275 U.S. at 270; *see also Higgins v. Carr Bros. Co.*, 317 U.S. 572 (1943) (holding that, when merchandise coming from without the state was unloaded at grocery wholesaler's place of business, ***interstate movement ended*** where, from that point onward, wholesaler owned all of its merchandise, made its own deliveries, and made no sales on commission nor on order with shipments direct from the out of state dealer or producer to the retail customer). Although it is anticipated that Defendants will point to cases that have held that the shipper need not know the exact ultimate destination of the goods in order to intend that the goods move continuously in interstate commerce (*see, e.g., Int'l. Brotherhood of Teamsters v. I.C.C.*, 921 F.2d 904 (9th Cir. 1990)), these cases are ***irrelevant*** in situations such as this one, which involve two separate shippers, one to the terminals (subject to the Secretary of Transportation's interstate authority) and one from the terminals (purely intrastate), so that the out-of-state shipper is not the person who determines the final destination of the goods. *Central Freight Lines v. I.C.C.*, 899 F.2d 413 (5th Cir. 1990); *see also Texas v. U.S.*, 866 F.2d 1546 (5th Cir. 1989).

Accordingly, like the interstate movement of goods in *Atlantic Coast Line R. Co.*, ***the interstate movement of goods in this case ends upon arrival at the Port***, in the case of Fueltech, ***and upon delivery to Florigas' on-site storage tanks***, in the case of Florigas. Any subsequent

delivery of these goods by Plaintiffs to Defendants' customers is purely intrastate movement and there is no "practical continuity of movement between the intrastate segment and the overall interstate flow." *Mena*, No. 09-12657, 2009 WL 3004009 at *3. Thus, the Motor Carrier Act Exemption does not apply.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs are not exempt employees under the Motor Carrier Act and the Defendants are not exempt from the wage and hour requirements of the Fair Labor Standards Act as a matter of law and, thus, Defendants' Motion for Final Summary Judgment should be DENIED and Plaintiffs' Cross-Motion for Partial Summary Judgment as to Defendants' Motor Carrier Act defense should be GRANTED.

Respectfully Submitted,

**REINER & REINER, P.A.**
*Counsel for Plaintiffs*
9100 So. Dadeland Boulevard, Suite 901
Miami, Florida   33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
e-mail:   *dpr@reinerslaw.com*

                 /S/   **DAVID P. REINER, II**
By: _____
     **DAVID P. REINER, II**; Florida Bar No. 416400

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY that on February 25, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

**REINER & REINER, P.A.**
*Counsel for Plaintiffs*
9100 So. Dadeland Boulevard, Suite 901
Miami, Florida   33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
e-mail:   *dpr@reinerslaw.com*

   **/S/   DAVID P. REINER, II**
By: _____
   **DAVID P. REINER, II**; Florida Bar No. 416400

# SERVICE LIST

(CASE NO. 09-21948-CIV-GRAHAM/TORRES)

*CM/ECF or E-mail*

**DAVID P. REINER, II, ESQ.**
REINER & REINER, P.A.
9100 South Dadeland Blvd., Suite 901
Miami, Florida   33156-7815
Tel: (305) 670-8282; Fax: (305) 6709-8989
E-mail:  *dpr@reinerslaw.com*
*(Counsel for Plaintiffs)*


**MICHAEL A. PANCIER, ESQ.**
LAW OFFICES OF MICHAEL A. PANCIER, P.A.
9000 Sheridan Street, Suite 96
Pembroke Pines, Florida   33024
Tel: (954) 862-2217; Fax: (954) 862-2287
E-mail:  *mpancier@pancierlaw.com*
*(Counsel for Defendants)*