UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 09-21948-CIV-GRAHAM/TORRES

FRANCISCO ROMERO, et al.,

    Plaintiffs,

v.

FUELTECH OIL SERVICE CORP.,
et al.,

    Defendants.
_____/

### ORDER

**THIS CAUSE** comes before the Court upon Defendants' Motion for Final Summary Judgment [D.E. 42] and Plaintiffs' Consolidated Opposition to Defendants' Motion for Final Summary Judgement and Cross-Motion for Partial Summary Judgment [D.E. 46].

**THE COURT** has considered the Motions, the pertinent portions of the record, and is otherwise duly advised in the premises.

Plaintiffs Francisco Romero, Reinier Guerrero-Faife, Conrado Diaz, Nelson J. Rojas and Ramiro Rodriquez ("Plaintiffs") filed this action against Defendant Fueltech Oil Service Corp. ("Fueltec") and Florigas, Inc. ("Florigas")(collectively the "Defendants") for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq, ("FLSA"). Defendants claim that Plaintiffs are exempt from the FLSA under the Motor Carrier Act ("MCA"), 29 U.S.C. §213(b)(1). The only prong in dispute over

the MCA's application is whether Plaintiffs' activities constituted interstate commerce. Based on the undisputed facts presented in the Motions,[1] the Court finds Plaintiffs' activities do not constitute interstate commerce. Accordingly, the motor carrier exemption does not apply.

## BACKGROUND

Defendants are fuel distributors.[2] Each purchase fuel, for later distribution, from outside sellers. Specifically, Feultec purchases fuel from TransMontaigne Product Services, based out of Denver, Colorado and Florigas purchases fuel from Targa Liquids Marketing and Trade based out of Houston, Texas. Both Fueltec and Florigas only distribute the fuel to customers located in Florida.

### 1. The Fuel's Interstate Journey

All of the fuel at issue in this case originates from somewhere outside of the state of Florida. TransMontaigne's barges deliver fuel from refineries in Louisiana, Texas and/or Mississippi to Port Everglades in Florida. At Port Everglades, the fuel is pumped into Transmontaigne's large storage tanks. Targa's barges deliver fuel from sources outside of Florida into the state. Once off the barges, Targa's trucks transport the fuel to Florigas'

---

[1] Defendants submitted a statement of material facts and a supplemental statement of material facts, each in support of its motion. Plaintiffs do not dispute these facts.

[2] For purposes of this Order, the Court refers to all of the Defendants' relevant products -- diesel fuel, gasoline and/or propane gas -- as fuel.

local facility, where it is placed in Florigas' temporary storage tanks.

## 2. The Defendants' Intrastate Distribution

Once the fuel is in Florida, the Defendants take over and begin to distribute the fuel to their custommers. Fueltec purchases the fuel from TransMontainge's storage tanks on a daily basis, to satisfy existing orders to its customers. An agreement between Feultec and TransMontaigne governs these purchases, wherein Fueltec is allocated a certain amount of fuel for the year. The contract also contains provisions as to when and how much fuel Fueltec may lift in any given day and/or week. Fueltec's customers include other wholesalers, service stations, marinas, construction companies, transportation companies, freight forwarders, businesses and to private owners of large boats. There is no evidence establishing that TransMontaigne has any contact with Fueltec's customers or the fuel after it is placed in the storage tanks.

After Florigas purchases its fuel from Targa, it draws from its storage tanks on a daily basis to make deliveries with its trucks to its customers. Florigas' customers include restaurants, dry cleaners, warehouses, cargo airlines, hotels, resellers and freight forwarders. As with the TransMontaigne/Fueltec relationship, there is no evidence that Targa has any contact with Florigas' customers or the fuel after it is placed in the storage tanks.

The Plaintiffs were Feultec and Florigas drivers. They transported the fuel from the storage facilities in Florida to the Defendants' customers in Florida.

## **STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). That burden is discharged if the moving party shows the Court that there is "an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has discharged its burden, the nonmoving party must designate specific facts showing that there is a genuine issue of material fact. Id. at 324. Issues of fact are "genuine" only if a reasonable fact finder considering the evidence presented could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Material facts are those that will affect the outcome of the trial under the substantive law. Id. at 248. In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the

nonmoving party. Id. at 261 n.2. All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. Hayden v. First Natl. Bank of Mt. Pleasant, 595 F.2d 994, 996-97 (5th Cir. 1979).

The court may not weigh the credibility of the parties on summary judgment. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1531 (11th Cir. 1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. Id.; see also McCormick v. Ft. Lauderdale, 333 F.3d 1234, 1240 (11th Cir. 2003) ("Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment."); Moorman v. Unumprovident Corp. 464 F.3d 1260, 1267 n.1 (11th 2006) ("Credibility determinations at summary judgment stage are impermissible.") The Court reviews the Motions applying the foregoing principles.

## DISCUSSION

Plaintiffs assert they worked more than forty (40) hours per week during their employment and are therefore entitled to overtime compensation pursuant to the FLSA, 29 U.S.C. §207. Pursuant to the FLSA, employers must compensate employees for time worked in excess of forty hours per week and at a rate not less than one and one-half times their regular rate. 29 U.S.C. §207(a)(1). If an

employer fails to pay overtime, where required by law, an employee may sue an employer for unpaid overtime wages. 29 U.S.C. §216(b).

Defendants claim Plaintiffs are exempt under the motor carrier exemption, 29 U.S.C. §213(b)(1), and are, therefore, not entitled to overtime compensation. The Court construes FLSA exemptions narrowly against the employer. See Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995)(per curiam). The employer bears the burden of showing its entitlement to the exemption. See Id.

### Motor Carrier Exemption

FLSA overtime provisions do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of" the MCA. 29 U.S.C. §213(b)(1). "The Secretary of Transportation may prescribe requirements for (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(1)(2).

Accordingly, the motor carrier exemption applies if the Secretary of Transportation has the power to establish maximum hours and qualifications of service of employees. That power is triggered if: (1) the employee is "employed by carriers whose

transportation of passengers or property by motor vehicle is subject to [the Secretary's] jurisdiction" of the Motor Carrier Act; and (2) the employee is "engage[d] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2.

In this matter, the only disputed issue is whether the Plaintiffs were engaged in activities directly affecting the safety of motor vehicles *in interstate commerce*. (Emphasis added).

### Interstate Commerce

The parties agree that Plaintiffs' activities took place entirely within the state of Florida. However, the motor carrier exemption can still apply because even "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.' For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." Walters v. Am.Coach Lines of Miami, Inc., 575 F.3d 1221, 1229 (11th Cir. 2009)(citations omitted). A "critical factor in determining the shipment's essential character is the shipper's 'fixed and persistent intent' at the time of the shipment." Mena v. McArthur Dairy, LLC, 2009 WL 3004009 (11th Cir. 2009)(citing 29 C.F.R. §782.7(b)(2)). "Whether the shipper has the requisite intent to

move goods in interstate commerce depends on the totality of the facts and circumstances of each case." Central Feight Lines v. I.C.C., 899 F.2d 413, 419-20 (5th Cir. 1990)(quoting Texas v. United States, 866 F.2d 1546, 1556 (5th Cir. 1989)). "The nature of a shipment is . . . determined . . . by the essential character of the commerce, reflected by the intention formed prior to shipment, pursuant to which the property is carried to a selected destination by a continuous or unified movement." Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217, 223 (2d Cir. 2002)(quoting Foxworthy v. Hiland Dairy Co., 997 F.2d 670, 672 (1th Cir. 1993). See also Atlantic Coast Line R. Co. V. Standard Oil of Kentucky, 275 U.S. 257, 269, 48 S.Ct. 10, 72 L.Ed. 270 (1927)(determining continuity of transportation by examining whether the destination of the goods "is arranged for or fixed in the minds of the sellers."); Kitzek v. Steiner Corp., 110 F.3d 1465, 1469 (9th Cir. 1997)("Whether transportation is interstate of intrastate is determined by the essential character of the commerce, *manifested by shipper's fixed and persisting transportation intent at the time of the shipment.*")(emphasis in the original); 29 C.F.R. § 782.7(b)(2)(intrastate transportation can satisfy the interstate commerce requirement of the MCA if the shipper has a "fixed and persisting transportation intent beyond the terminal storage point at the time of shipment.")

The Eleventh Circuit is in favor of a "general consideration that draws a fixed and persisting intent 'from all of the facts and circumstances surrounding the transportation.'" Mena, 2009 WL 3004009 at *4.

Accordingly, because Plaintiffs' travel was entirely within the state of Florida, the Court must review the undisputed facts to determine whether Plaintiffs transported the fuel in interstate commerce.

## Analysis

The law clearly provides that the shipper's intent is key in determining if the motor carrier exemption applies. Accordingly, the Court must begin by identifying the "shipper." In this matter, the fuel supplier and the defendant distributors are distinct entities. Both Transmontaigne and Targa Liquids ship fuel from outside the state into Florida. Transmontaigne delivers its fuel to storage tanks at Port Everglades, while Targa delivers its fuel to Florigas' facility. Transmontaigne and Targa bring the fuel into Florida from out of state. It is only when the fuel comes to rest in Florida, do the Defendants take over. Accordingly, the Court finds Transmontaigne and Targa are the shippers.

The question thus becomes what was Transmontaigne and Targa's intent at the time the fuel left their out of state facitilies. Did they intend for the fuel to continue on past Fueltec and

Florigas to the end customers, or did they simply intend for the fuel to make it into Florida?

Based on the facts presented, the Court simply cannot conclude that the shippers had a fixed and persistent intent for the fuel to continue past the storage point. Although Fueltec and Florigas had specific orders from their various customers, these orders were not with the shipper. Indeed, the record reflects that the shippers only have arrangements with Fueltec and Florigas. Unlike some of the other cases presented, the shipper has no connection to the ultimate consumer. The shippers do not have contracts with the gas stations, restaurants and others who purchase fuel from Defendants. Compare Walters, 575 F.3d at 1224 (Cruise passengers paid shipper cruise line directly for use of distributor shuttle service); Billings v. Rolling Frito-Lay Sales, LP, 413 F.Supp.2d 817 (S.D. Tex. 2006)(shipper owned the distribution center). Indeed, because Defendants compensate the shippers regardless of who purchases the fuel after it is loaded into the storage tanks, it is clear that the shippers' interest in the fuel ends when it lands in Florida. Accordingly, the Court finds the shippers' intent was only to get the fuel into Florida, but not to continue on as a separate leg of interstate commerce. As a result, Defendants' intrastate distribution of the fuel simply does not meet the interstate commerce requirement.

## CONCLUSION

Because the Plaintiffs were not engaged in activities directly affecting the safety of operation of motor vehicles in interstate commerce, the motor carrier exemption does not apply. Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [D.E. 42] is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Plaintiffs' Cross-Motion for Partial Summary Judgment [D.E. 46] is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of April, 2010.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:  U.S. Magistrate Judge Torres
     Counsel of Record